# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ROSE JOHNSON                                                   CIVIL ACTION

VERSUS                                                         14-43-SDD-RLB

FLUOR CORPORATION

## RULING

Before the Court are Defendant Fluor Maintenance Services, Inc.'s ("FMS") *Motion for Summary Judgment*[1] and *Motion to Strike*.[2]  Both of the *Motions* have been opposed by Plaintiff, Rose Johnson.[3]  For the following reasons, the Court grants FMS's *Motion for Summary Judgment* and grants in part and denies in part, as moot, FMS's *Motion to Strike*.

## I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Rose Johnson, filed this employment discrimination lawsuit against her former employer, FMS.  Johnson was first hired by FMS on September 28, 2009 as a temporary laborer at the Big Cajun II power plant in New Roads, Louisiana, which is owned and operated by a subsidiary of NRG ("Big Cajun II" or the "plant").  NRG contracts with FMS to provide maintenance services and repair work to Big Cajun II during scheduled maintenance periods, commonly referred to as "outages". FMS hires temporary employees to augment its workforce during outages. Once the maintenance

---

[1] Rec. Doc. 22.

[2] Rec. Doc. 30.  FMS actually captioned this pleading as "FMS's Objections to Plaintiff's Summary Judgment Evidence and Motion to Strike".

[3] Rec. Doc. 28 and Rec. Doc. 33. The Court also has considered FMS's *Reply in Support of its Motion for Summary Judgment.*  Rec. Doc. 31.

or repairs are complete or near completion, FMS lays off the temporary employees in a reduction in force ("RIF").  Between the fall of 2009 and the fall of 2011, FMS hired Johnson as a temporary laborer for thirteen separate periods of employment.

On June 9, 2011, Johnson filed a Union grievance against her supervisor, Homer Jones ("Jones"). According to Johnson, Jones was acting inappropriately by yelling at her, threatening to fire her, and making up lies about her.  Notably, Jones reported directly to Glenn Jarreau ("Jarreau"), Superintendent II.[4]  FMS conducted an investigation and, although unable to substantiate Johnson's claims, removed Jones from Johnson's chain of command.  Johnson and Jones were also instructed to cease communication with each other.   Later that same month while meeting with her Union Steward, Ray Reech, regarding her grievance against Jones, Johnson alleged for the first time that Jarreau had acted unprofessionally and inappropriately toward her.  After conducting an investigation into Johnson's allegations against Jarreau, FMS terminated Jarreau on July 8, 2011 for unprofessional conduct.[5]   Following Jarreau's termination, James Devoltz began supervising Johnson.  After Devoltz began supervising Johnson's work, he approved Johnson's request to work an upcoming outage.

On October 20, 2010, Johnson was laid off as part of a reduction in force ("RIF"). Shortly thereafter, Johnson filed a second grievance with the Union alleging she had been unfairly discharged.  At the close of its investigation, the Union determined Johnson's layoff was neither discriminatory nor retaliatory.[6]

---

[4] Rec. Doc. 22-32.  Jones had no authority to fire, promote, or transfer Johnson.
[5] The FMS investigator, Amy Thornton, who at the time was the Director of Employee Relations and HR Compliance, could not conclude whether Jarreau or Johnson initiated the sexually oriented conduct.  Rec. Doc. 22-33.  "Despite her allegations, it was unclear if the Charging Party was pursuing Mr. Jarreau or vice versa."
[6] Rec. Doc. 22-46.

In addition to filing a Union grievance, Johnson submitted a letter dated February 14, 2012 to the Equal Employment Opportunity Commission ("EEOC") in which she asserted claims of discrimination against FMS.  In her letter, she claimed that Jarreau had sexually harassed her and that FMS had laid her off on October 20, 2010 because of her gender and in retaliation for filing claims of harassment in the workplace in June of 2010. Johnson filed a formal Notice of Charge ("charge") with the EEOC on July 11, 2012.[7]  Johnson amended her charge on July 1, 2013 and, for the first time, asserted complaints against NRG employee, Brian Bradley, alleging that he sexually harassed her from January of 2010 until January 10, 2011.[8]

On January 17, 2014, Johnson filed the instant *Complaint*[9] against FMS in which she asserted claims of retaliatory and discriminatory discharge, sexual harassment, and hostile work environment.[10]  Johnson's claims are premised strictly on allegations of sexual harassment by FMS employee Jarreau, NRG employee Bradley, and FMS's reduction in force which resulted in her termination on October 20, 2011.[11]  FMS seeks dismissal of Johnson's claims of sexual harassment on the grounds that they are time-barred.  FMS further contends that the undisputed evidence shows that Johnson cannot

---

[7] Rec. Doc. 22-42.

[8] Rec. Doc. 22-44.

[9] Rec. Doc. 1.

[10] Neither party has disputed the fact that Johnson received a Right to Sue Letter from the EEOC.

[11] In her deposition testimony, Johnson specifically averred that her *Complaint* and EEOC charges are solely premised upon these claims.  Rec. Doc. 22-30, p.17 (p. 63); p. 52-53 (pp. 204-05: "Q: And aside from sexual harassment by Mr. Jarreau and Mr. Bradley, you're also complaining that you were discharged, right? In this charge of discrimination.  A: Yes, I was.  Q: Aside from the sexual harassment by Mr. Jarreau, and aside from the sexual harassment by Mr. Bradley and aside from being discharged, you're not complaining about anything else in the charge of discrimination…" A: Yeah."); p. 83 (pp. 325-26: "And like your EEOC charge that we talked about before, your complaint is about harassment by Glenn Jarreau and Brian Bradley, the NRG employee and your termination from employment, correct?  A: Right.  Q: Those are the three things that you're complaining about in this case? A: Correct.").  Therefore, any attempt by Johnson to premise her sexual harassment or hostile work environment claims on Jones' conduct are improperly before the Court and shall not be considered.

establish a *prima facie* case of sexual harassment under Title VII,[12] and Johnson cannot rebut the legitimate, non-discriminatory and non-retaliatory reasons for her termination as pretextual.   Additionally, FMS moves to strike Johnson's *Affidavit*,[13] Chronology of Events[14] allegedly submitted with Johnson's EEOC letter, *Statement of Disputed, Material Facts*,[15] as well as the evidentiary support cited to support such statements, submitted in opposition to FMS's motion.[16]   Johnson opposes both motions and contends that her claims are timely and genuine issues of material fact exist as to her claims of sexual harassment, hostile work environment on the basis of sex, and discriminatory and retaliatory discharge precluding summary judgment.

## II.    MOTION TO STRIKE

FMS moves to strike Johnson's *Affidavit* in its entirety because it contradicts prior deposition testimony, lacks foundation, improperly states legal conclusions, and contains inadmissible hearsay.  FMS also challenges the admissibility of written statements prepared by Johnson and "purportedly" sent to the EEOC, Johnson's attorney, and FMS, on authenticity and hearsay grounds.   FMS further moves to strike Johnson's *Statement of Disputed, Material Facts* for failure to controvert what FMS identified as uncontested facts and for failing to identify and rely upon admissible evidence.  Without citing any legal

---

[12] FMS argues that Johnson cannot show that FMS knew of the alleged conduct by Bradley because Johnson never reported it; the alleged harassing behavior by Jarreau was neither severe nor pervasive; Johnson failed to take advantage of corrective opportunities to address the harassment; FMS took prompt remedial action; and FMS laid off Johnson in October of 2011 for a legitimate, non-discriminatory and non-retaliatory reason.

[13] Rec. Doc. 28-2.

[14] Rec. Doc. 22-43.   The date on the Chronology of Events is February of 2012, and has Johnson's typewritten name and contact information on the first page.  The Chronology of Events was the subject of extensive questioning during Johnson's deposition. Rec. Doc. 22-30.  Johnson attested under oath that she did, in fact, prepare this document in February of 2012.  See, Rec. Doc. 22-30, p. 36.

[15] Rec. Doc. 28-1.

[16] FMS also seeks to strike inadmissible evidence referenced by Johnson in her *Opposition.*  The referenced evidence primarily consists of information allegedly submitted to the EEOC.

authority, Johnson contends that evidentiary objections to her summary judgment are inappropriate. Contrary to the Plaintiff's protestations, the sufficiency and competency of summary judgment evidence is an inquiry which should and must, when challenged, be made by the Court.[17]

Johnson's *Affidavit* is unsigned and fails to attest that the statements were made under penalty of perjury.[18]  "It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment.  A statutory exception to this rule exists under 28 U.S.C. § 1746, which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.'"[19]  Such requirements are necessary to prevent an affiant from "circumvent[ing] the penalties for perjury in signing onto intentional falsehoods."[20]  Therefore, on these grounds alone, Johnson's *Affidavit* does not qualify as competent summary judgment evidence.

Accordingly, Johnson's *Affidavit*[21] will not be considered by the Court and FMS's *Motion to Strike* the Affidavit is GRANTED.  The Court further notes that even if the Affidavit were admissible, it would not change the outcome of the Court's *Ruling*.  While FMS's remaining evidentiary objections may be sound, because the Court shall GRANT

---

[17] "The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice,* 393 F.3d 577, 589-90 (5th Cir.2004); *Domino v. Texas Dept. of Criminal Justice,* 239 F.3d 752, 755 (5th Cir.2001); *Ragas v. Koch Gateway Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). . . .[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Grimes v. Texas Dep't of Mental Health,* 102 F.3d at 139-140. See also, *McDaniel v. Barton,* 2007 WL 865689, at *3 (E.D.Tex. 2007).
[18] The *Affidavit* provides that "Rose Johnson, who, after being duly sworn, did depose and state…" Rec. Doc. 28-2, p.1.  No declaration has been offered by Johnson to remedy this defect.
[19] *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988).
[20] *Id.*
[21] Rec. Doc. 28-2.

FMS's *Motion for Summary Judgment* the Court denies FMS's *Motion to Strike* the remaining evidence made the subject of its motion as moot.

## III.    MOTION FOR SUMMARY JUDGMENT

### A.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[22]  "An issue is material if its resolution could affect the outcome of the action."[23] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[24]  "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[25]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[26]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[27]

---

[22] Fed. R. Civ. P. 56(a).
[23] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[24] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).
[25] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25).
[26] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[27] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[28]  The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[29]  However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim".[30]  "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'"[31]

## B. ANALYSIS

### 1. Are Johnson's Sexual Harassment Claims Time-Barred?

FMS moves the Court to dismiss all of Johnson's Title VII sexual harassment claims arising out of events that occurred prior to April 20, 2011.  In a deferral state[32] like Louisiana, an aggrieved individual must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice.[33]  Johnson first asserted her charges of a sexual hostile working environment and retaliatory discharge to the EEOC in a letter dated February 14, 2012.[34]  Therefore, FMS argues that any of

---

[28] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[29] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[30] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[31] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).

[32] "The Louisiana Commission on Human Rights has authority to remedy employment discrimination, rendering Louisiana a 'deferral state.'" *Conner v. La. Dept. of Health and Hosp.*, 247 Fed.Appx. 480, 481 (5th Cir. 2007).

[33] 42 U.S.C. § 2000e-5(e)(1).

[34] As previously noted, a formal charge of discrimination signed by Johnson and dated July 11, 2012, was subsequently submitted to the EEOC.  Rec. Doc. 22-42.

Johnson's Title VII claims arising from actions that occurred before April 20, 2011 are time-barred as a matter of law.[35]

The Fifth Circuit has "recognized what is called a 'continuing violation theory' in the context of determining whether a Title VII claim is time-barred."[36]  The continuing violation theory "generally applies to hostile work environment claims, as opposed to intentional acts of discrimination, like demotion or failure to promote."[37]  "Unlike in a case alleging discrete violations, a hostile environment plaintiff is not limited to filing suit on events that fall within this statutory time period because her claim 'is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'"[38] "[T]he 300 day limitations period may be equitably tolled until the time the facts supporting a cause of action are or should be apparent to the employee."[39] "The core idea [being] that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights."[40]

However, this continuing violation theory is limited:

First, the plaintiff must demonstrate that the "separate acts" are related, or else there is no single violation that encompasses the earlier acts.  Second, the violation must be continuing; intervening action by the employer, among

---

[35] FMS does acknowledge that Johnson's October 20, 2011 layoff would not be time barred.  Rec. Doc. 22-1, p. 3.

[36] *Vidal v. Chertoff*, 293 Fed.Appx. 325, 327 (5th Cir. 2008)(citing *Huckabay v. Moore*, 142 F.3d 233, at 238 (5th Cir. 1998)).

[37] *Vann v. Mattress Firm, Inc*., No. H-12-3566, 2014 WL 4677459, at *4 (S.D. Tex. Sept. 18, 2014) (citing *Huckabay* at 238). The Court further observes that within the Fifth Circuit the continuing violation theory and the continuing violation doctrine are used interchangeably.

[38] *Stewart v. Miss. Transp. Comm'n*., 586 F.3d 321, at 328 (5th Cir. 2009)(quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, at 115 (2002)).

[39] *Henderson v. AT & T Corp*., 933 F.Supp. 1326, 1333 (S.D.Tex.,1996)

[40] *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir.1998)(internal citations omitted).

other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window.  Third, the continuing violation doctrine is tempered by the court's equitable powers, which must be exercised to "honor Title VII's remedial purpose 'without negating the particular purpose of the filing requirement.'"[41]

The Fifth Circuit has identified three particularly relevant factors for courts to consider in determining whether a plaintiff can support a continuing violation claim:

> The first is subject matter: Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation?  The second is frequency.  Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision?  The third factor, perhaps of most importance, is degree of permanence.  Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?[42]

### a. Claims as to Bradley

As for Johnson's claims against Bradley, the Court finds that all of her claims are time-barred.  It is undisputed that Johnson did not assert any claims against Bradley until she filed her Amended Charge with the EEOC on July 1, 2013, in which she claimed that Bradley's sexual harassment began in January of 2010 and continued through January 10, 2011.  From the date of Bradley's last alleged act of sexual harassment until the time Johnson filed her Amended Charge, approximately 903 days had lapsed.  Johnson has not attributed any sexually harassing conduct to Bradley within the filing period so as to trigger the application of the continuing violation theory.  Therefore, the Court finds that Johnson's claims of sexual harassment against Bradley are time-barred as a matter of law.

---

[41] *Id.* (internal citations omitted).
[42] *Berry v. Board of Supervisors of Louisiana State University*, 715 F.2d 971, 981 (5th Cir. 1983).

**b.  Claims as to Jarreau**

The evidentiary record before the Court reveals only one alleged act of sexual harassment attributable to Jarreau that occurred within the 300 day filing period.  On June 3, 2011, Jarreau allegedly told Johnson that "it's hard for a man not to come when a woman's got good p[***]y."[43]   FMS contends that Jarreau's comment cannot serve as continuation of alleged acts that occurred prior to April 20, 2011. Plaintiff bears the burden of establishing the equity of applying continuing violation theory. However, Johnson simply cavalierly responds by arguing that her "case is not time barred" and that FMS's attempt to segregate each incident of harassment should carry no weight.[44]

With the exception of the June 3, 2011 comment, Johnson's February 2012 Chronology of Events[45] identified each incident of sexual harassment involving Jarreau from January 2010 until her termination in October of 2011.[46]   The Court construes the following as the other alleged incidents of harassment:  (1) January 18, 2010: Jarreau asked Johnson to send a nude photo of herself to him; Jarreau sent Johnson a nude picture of himself; (2) January 27, 2010: Jarreau allegedly cussed Johnson out after he saw her and Bradley laughing; (3) a few weeks later Jarreau asked Johnson to send him a video message of her masturbating; (4) May 22, and May 23, 2010: Jarreau sent

---

[43] The June 3, 2011 communication was not part of the Chronology of Events submitted to the EEOC. Rather, this additional incident came up during Johnson's deposition testimony.  Rec. Doc. 22-30, p. 45 (pp. 175-176); p. 97 (p. 381).

[44] Rather than focusing on any of the alleged acts preceding April 20, 2010 to support the application of the continuing violation theory, Johnson focuses on the fact that her October 22, 2010 termination and the denial of her lateral transfer (a claim that is not properly before the Court) both occurred within the 300 day filing period.  Rec. Doc. 28, p. 5.

[45] Rec. Doc. 22-43. The Court looks to the Chronology of Events, subject to the defendants Motion to Strike, solely to determine the acts which the Plaintiff contends are saved from dismissal by virtue of the equitable tolling continuous violation doctrine.

[46] The Court takes notice of the fact that Jarreau was not an FMS employee after his termination date on July 8, 2011.

Johnson another nude photo of himself, and asked Johnson for more photos and videos of herself; (5) May 25 – May 27, 2010:  Jarreau texted Johnson on the subject of sex; (6) June 10, 2010:  Jarreau asked Johnson to let him touch her and Johnson reluctantly let Jarreau put his finger in her vagina; (7) June 11 and 14, 2010: Jarreau cussed out Johnson; (8) August 1, 2010: Jarreau asked Johnson to take a nude photo of her breast and to send it to him; (9) August 2, 2010: Jarreau allegedly called Johnson and was very angry she had not sent him anymore photos; (10) August 16, 2010: Jarreau asked Johnson for oral sex; (11) October 9 and 13, 2010:  Jarreau sent two (2) nude photos (not of himself) and an x-rated video (not of himself) to Johnson; (12) October 29, October 30, November 1, and November 5, 2010: Jarreau sent Johnson more nude photos and videos and asked Johnson to send him video of her masturbating; and (13) February 10, 2010: Johnson alleged that Jarreau was angry and cussed a lot.  These alleged discriminatory acts remain viable only if the continuing violation doctrine applies.

First, the Court finds that the alleged acts do not involve the same type of discrimination.  In particular, the incidents of January 27, 2010, June 11, 2010, June 14, 2010, and February 10, 2010, involve cussing and yelling, whereas the remaining incidents are allegedly of a sexual nature.  Although the last sexually triggered incident occurred on November 5, 2010--when Jarreau allegedly sent her more nude photos and videos and asked her for a video of herself masturbating--Johnson admitted that she never received any other text messages, emails, videos or pictures of a sexual nature from Jarreau after November 8, 2010.   The next sexually charged incident occurred almost seven months later on June 3, 2010, when Jarreau allegedly made the "p***y" comment.  Considering this seven month gap in time between alleged incidents of sexual

harassment, the June 3, 2011 incident appears to be more in the nature of a discreet act. As for the second factor, FMS argues that because the Plaintiff's employment was intermittent and some of the acts occurred when she was in a period of lay-off, that the Plaintiff cannot demonstrate recurrence or, alternatively, that the lay-offs constitute intervening action by the employer which "severs" the acts that precede the filing period.

The Court is not convinced that Johnson's multiple periods of employment by FMS are intervening factors that bar the application of the continuing violation theory.  FMS acknowledged that it hires temporary employees to augment its regular workforce for maintenance and outage projects and that its practice of frequently hiring and laying off workers within short time periods is very common in the construction business.[47]  Such a customary employment practice seems to work against FMS's argument in this particular case.  It is undisputed that, between January of 2010 and February 8, 2010, FMS hired Johnson ten (10) times.  While the Court acknowledges that Johnson was technically a temporary employee of FMS, a review of her employment history during the period of alleged harassment by Jarreau, appears to be more continuous than not.[48]  Moreover, the Court finds that the four month break in employment from October 22, 2010 to February 8, 2011 is not significant enough to qualify as an intervening act under the jurisprudence relied upon by FMS.[49]

---

[47] Rec. Doc. 22-32.

[48]  Johnson's employment with FMS from January 2010 through February 2011 is as follows: January 18, 2010-January 22, 2010; January 25, 2010 – January 29, 2010; February 1, 2010 – February 8, 2010; March 29, 2010 – May 18, 2010; June 9, 2010 – June 18, 2010; June 27, 2010 – June 28, 2010; July 26, 2010 – July 28, 2010; August 18, 2010 – August 24, 2010; October 1, 2010 – October 22, 2010; and February 8, 2010 – October 10, 2011. Rec. Doc. 22-32.

[49] *Brooks v. Yellow Transp., Inc.*, 2013 WL 1103083 (N.D. Tex. March 18, 2013)(continuing violation theory inapplicable where employee had almost a five year break in employment); *Butler v. MBNA Tech, Inc.*, 111 Fed.Appx. 230, 233-34 (5th Cir. 2004)(per curiam)(continuing violation theory not applied because more than five years had lapsed between two incidents of harassment); *Felton v. Polles*, 361 F.3d 470, 485 (5th

In considering the third and final factor, the Court recognizes the extremely intrusive nature of the June 10, 2010 incident—Jarreau's alleged physical touching of Johnson's vagina.  However, when the Court considers all of the discrete instances of sexual harassment,  it is not as apparent that any one of these incidents was significantly more likely to put Johnson on notice that the sexual harassment was an ongoing event and that her rights had been violated, than the one incident on June 3, 2011, within the filing period.  Considering the continuing violation theory is "equitable in nature", the Court finds that extending the limitations period to encompass the otherwise untimely incidents of harassment is warranted in this case.  Nevertheless, Johnson's hostile work environment sexual discrimination claim still fails for the following reasons.

### 2.  Alternatively, FMS is Immune from Liability Under Ellerth/Faragher Defense

The Court, assuming without finding that Johnson could establish a *prima facie* case of hostile work environment claim for sexual harassment,[50] finds that FMS would still prevail on summary judgment as it is immune from liability under the *Ellerth/Faragher* affirmative defense.  Where a supervisor's harassment does not culminate in a tangible employment action, as in the instant matter,[51] "the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care

---

Cir. 2002)(continuing violation theory not applicable where employee continued to work for the same company but was transferred away from harassing supervisor for three years and then transferred back).

[50] To establish a prima facie case of harassment, Johnson must show: "(1) she is a member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a 'term, condition or privilege' of [her] employment; and (5) [the] employer knew or should have known of the harassment and failed to take remedial action." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). If the alleged harasser has supervisor authority, such as Jarreau, only the first four elements need to be satisfied. *Matherne v. IHOP*, 624 Fed. Appx. 835, 839 (5th Cir. 2015)(citing *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999)).

[51] In her *Opposition*, Johnson argues that Jarreau denied her request to transfer to another laborer position. For reasons discussed in supra note 10, such a claim is not properly before the Court.

to prevent and correct any harassing behavior, and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided."[52]   "The employer bears the burden of proving both elements by a preponderance of the evidence."[53]

### a. FMS's Reasonable Care to Prevent and Correct Promptly Any Sexually Harassing Behavior

"When a company, once informed of the allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability."[54] "Prompt remedial action must be reasonably calculated to end the harassment."[55] While "an employee must take advantage of corrective opportunities provided by the employer," if an employee believes that bringing a complaint "would be futile, or it becomes objectively obvious that the employer has no real intention of stopping the harassment, the harassed employee is not obligated to go through the wasted motion of reporting the harassment."[56] "Whether an employer's response to discriminatory conduct is sufficient 'will necessarily depend on the particular facts of the case—the severity and persistence of the harassment, and the effectiveness of any initial remedial steps.'"[57]

The Court finds that summary judgment is proper on this point because the undisputed evidence shows FMS's response to Johnson's complaint of sexual harassment was sufficient. Johnson initially expressed her concerns about Jarreau in late June of 2011 during a follow-up meeting with her Union steward regarding another

---

[52] *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, at 452 (5th Cir. 2013)(quoting *Vance v. Ball State Univ.*, 133 S.Ct. 2434 @ 2439 (2013))(citations omitted).
[53] *Id.* at 462.
[54] *Harvill*, 433 F.3d @ 437(quoting *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 402 (5th Cir. 1993)).
[55] *Id.* (quoting *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 615-16 (5th Cir. 1999)).
[56] *Id.* (quoting *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 300-01 (5th Cir. 1999)).
[57] *Harris v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399-400 (5th Cir. 1996)(quoting *Waltman v. International Paper Co.,* 875 F.2d 468, 479 (5th Cir. 1989)(citations omitted).

grievance she filed.[58]   Upon learning of Johnson's concerns about Jarreau, FMS promptly launched its investigation in early July of 2011, by sending its Director of Employee Relations and HR Compliance, Amy Thornton, to Big Cajun II to investigate Johnson's complaint.[59]   As part of her investigation, Thornton met with Johnson and others.  It is also undisputed that Johnson had no further contact with Jarreau after reporting his conduct to FMS.[60]   Based on the findings of the investigation, FMS terminated Jarreau on July 8, 2011 for his conduct.[61] In summary, immediately upon reporting her complaints of harassment by Jarreau, Johnson was segregated from contact with him.   FMS commenced an investigation, completed its investigation, and terminated Jarreau within 1 month of Johnson's complaint.  Johnson has not offered any evidence to contradict these facts.  Accordingly, the Court finds that Johnson has failed to show that a genuine issue of material fact exists as to whether FMS took prompt and remedial action in response to her complaint.

### b. Did Johnson Unreasonably Fail to Take Advantage of Any Preventative or Corrective Opportunities Provided by FMS or to Avoid Harm Otherwise?

In *Faragher*, the Supreme Court stated that an employee must "avoid harm otherwise," meaning that "if damages could reasonably have been mitigated, no award against a liable employer should reward a plaintiff for what her own efforts could have avoided."[62]   The Fifth Circuit has explained that "*Faragher* implies that a plaintiff should not wait as long as it usually takes for a sexually hostile working environment to develop

---

[58] Rec. Doc. 22-30, p. 35.
[59] Rec. Doc. 22-32.
[60] Rec. Doc. 22-30, p. 48 (pp. 187-88). Johnson stated that, after her interview, she had "no contact at all" with Jarreau.  In fact, Johnson testified that she had no other interaction with Jarreau after he was fired.
[61] Rec. Doc. 22-32; Rec. Doc. 22-30, p. 35 (135-136).
[62] 524 U.S. @ 807.

when the company has an effective grievance mechanism.  If the plaintiff complains promptly, the then-incidental misbehavior can by stymied before it erupts into a hostile environment, and no actionable Title VII violation will have occurred."[63]  Indeed, "as employers' anti-harassment policies become increasingly comprehensive and well-implemented, a plaintiff's success will often turn on whether he promptly reported the harassing conduct."[64] In fact, Johnson had previously successfully used the grievance procedure.[65] "Thus, where an employer implements suitable institutional polices and educational programs regarding sexual harassment, an employee who fails to take advantage of those policies cannot recover.'"[66]

In this case, the uncontroverted evidence shows that Johnson acknowledged receiving FMS's project rules for workplace conduct, the Handbook, the Open-Door Policy and the Harassment Policy, and she knew she could call the Ethics Hotline.[67]  She further admitted that she understood that the Handbook, the EEO policy, Open-Door Policy, and Harassment Policy outlined the process by which employees could report problems or complaints.  Johnson further acknowledged that the grievance process did not require that she report her complaint directly to Jarreau.[68]   Johnson also knew and understood that she could use the Union grievance procedure to raise concerns about her

---

[63] *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 267 (5th Cir. 1999).

[64] *Boh Bros. Constr. Co.*, 731 F.3d at 463 n. 19.

[65] Rec. Doc. 22-30, p. 27 (p.103); Rec. Doc. 22-32.

[66] *Id.* (citation omitted).

[67] Rec. Doc. 22-30, p. 11 (pp. 37-40), p. 15-16 (54-57) (Johnson acknowledged receipt of FMS's guidelines, participated in orientation, and decided to be represented by the laborers' union with respect to terms and conditions of her employment); p. 78-79 (p. 306-310)(Johnson acknowledged signing a number of policy documents that included the "EEO policy and the open-door policy and the harassment policy" and the ethics hotline, and she acknowledged that the employee handbook had a policy regarding sexual harassment) p. 95 (p. 374)(Johnson acknowledged receipt of employee handbook).

[68] Rec. Doc. 78 (p. 307)("Q: None of those policies [EEO policy, open-door policy, or harassment policy] said you got to go to Glynn Jarreau.  A: I know that.  Q: Okay.  And the grievance process didn't say you got to go through Glynn Jarreau, isn't that right?  A: That's right.").

employment.[69]  Under the facts and circumstances of this case, either mechanism—the FMS complaint process or the Union grievance—would have constituted effective, corrective mechanisms for addressing workplace harassment.[70]   Nevertheless, the undisputed facts remain that for seventeen (17) months Johnson availed herself of neither of these mechanisms for addressing Jarreau's alleged sexually harassing conduct.  No matter how loudly Johnson proclaims that she did not know of FMS's policies or the Union's grievance procedure, her actions, specifically the filing of her Union grievance against Jones before she reported Jarreau's alleged behavior, demonstrate that Johnson knew and understood FMS's grievance process.[71]  Hence, the Court finds that Johnson has failed to demonstrate that a genuine issue of material fact exists regarding her failure to take advantage of corrective opportunities.

Based on the foregoing, the Court finds that, because Johnson has failed to satisfy her evidentiary burden on summary judgment as to the *Ellerth/Faragher* affirmative defense, her hostile work environment claim shall be dismissed.

### 3.  Johnson's Claim of Retaliatory and Discriminatory Layoff

In addition to her sexual harassment and hostile work environment claims, Johnson has also asserted claims based upon her October 22, 2010 layoff from FMS. Johnson claims that she was laid off because of her gender and as a form of retaliation

---

[69] Rec. Doc. 22-30, p. 11 (pp. 39-40)("Q: And you understand that you were asking or authorizing the union, the laborers union to represent you in your job relationship with Fluor Maintenance Services, correct? A: Yes.  Q: And you understood that as a union-represented employee, you had the ability to go to the union to complain about pay, working conditions, and things of that sort and they are to act on your behalf in resolving those disputes, correct?  A: Yes.  Q: And you understood that at the time that you started employment there, correct? A: Yes.").

[70] See *Watts*, 903 F.Supp. 2d 424.

[71] See *Moayedi v. Compaq Computer*, 98 Fed. Appx. 335, *3 (5th Cir. 2004)(court considered fact that employee knew of workplace harassment policies "because she had previously utilized them to stop a former harassing co-employee").

for complaining to FMS management about discrimination or harassment in the workplace in June of 2011.[72]  In response, FMS contends that Johnson was laid off for a legitimate, nondiscriminatory and non-retaliatory reason—Johnson was laid off as part of an RIF.

The court analyzes "Title VII retaliation claims under the burden-shifting framework established in *McDonnel Douglas Corp. v. Green*."[73]  "This framework has three steps: first, a plaintiff must set out a *prima facie* case of retaliation; if the plaintiff sets out a *prima facie* case, the burden shifts to the defendant to state a legitimate, non-discriminatory reason for its action; if the defendant provides such a reason, the plaintiff must prove that it is pretextual."[74]

To set forth a *prima facie* case of retaliation, a plaintiff must establish that: (1) she engaged in a protected activity as defined under Title VII, (2) she was subjected to an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action.[75]  For purposes of Johnson's gender discrimination claim, she must show: (1) membership in a protected class; (2) that she was qualified for her position; (3) that she was subjected to an adverse employment action; and (4) that she was replaced by someone outside of the protected class or was otherwise discharged due to her gender.[76]

---

[72] The Court is not convinced that any claims regarding Homer Jones are properly before the Court, particularly in light of the content of Johnson's charges filed with the EEOC.  Nevertheless, for purposes of her claims arising out of her discharge from FMS, the Court considers Johnson's claims filed against Jones, which were not sexual in nature, and Jarreau.  Rec. Doc. 22-30, pp. 32-34.  For instance, Johnson testified that her claims against Jones were based on instances where he yelled at her, threatened to fire her, and made up lies about her.

[73] *Wiggins v. St. Luke's Episcopal Health System*, 517 Fed.Appx. 249, at 251 (5th Cir. 2013).

[74] *Id.* at 251-52.

[75] *Feist v. La. Dept. of Justice*, 730 F.3d 450, 454 (5th Cir. 2013)(citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).

[76] *Russell v. McKinley Hospital Venture*, 235 F.3d 219, 223-24 (5th Cir. 2001).

Assuming, without deciding, that Johnson could establish a *prima facie* case, the Court finds that FMS has met its burden of rebutting the presumption of discrimination and retaliation by producing evidence of a legitimate, nondiscriminatory and non-retaliatory justification for terminating Johnson.   The Fifth Circuit has held that layoffs in response to business conditions "are presumptively legitimate and nondiscriminatory because a reduction in force 'is itself a legitimate, nondiscriminatory reason for discharge.'"[77]   The Outage Superintendent, James Devoltz, made the decision to lay off Johnson, along with eleven other employees, as part of the ROF because "(i) the outage season was nearing completion; (ii) there was no other available work to which Ms. Johnson could be assigned; and (iii) the Labor Journeyman position Ms. Johnson had held prior to her request to work the outage season was no longer available due to budgetary constraints that were required by NRG."[78]   "In deciding who to select for the ROF, Mr. Devoltz followed the established procedures and selection criteria and considered the project's needs and the scope of work that would continue on an ongoing basis."[79]   Of the eleven other employees included in the RIF, seven were men and four were women.[80]   Johnson has offered no competent summary judgment evidence to refute these points.   In fact, Johnson admitted during her deposition that she lacked any facts to support a conclusion that she was included in the October 21, 2010 reduction in force because of her gender or for filing her June, 2011 complaint of discrimination and harassment.[81]

---

[77] *Tyler v. La-Z-Boy Corp*, 506 Fed.Appx. 265, 269-70 (5th Cir. 2013)(*quoting E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996).
[78] Rec. Doc. 22-32, p. 6.  At the time Devoltz decided to include Johnson in the RIF, he was unaware of the fact that she had raised any complaints or concerns about the workplace.
[79] Rec. Doc. 22-32, p. 6.
[80] Rec. Doc. 22-32, p. 6; Rec. Doc. 22-45 ("Laborer Journeymen Reduction in Force").
[81] Rec. Doc. 22-30, pp. 18-19 (pp. 69-70).

In an attempt to demonstrate that FMS's decision was pre-textual, Johnson claims that during an April of 2011 meeting with all of the laborers, NRG employees stated how they "anticipated" that laborer jobs would continue for three more years.[82]   Johnson acknowledged that she was not personally "promised" a job.[83]   Johnson has also failed to produce any evidence suggesting that, at the time FMS made its lay off decision, FMS actually had any available work for Johnson.   More importantly, the competent summary judgment evidence shows that Johnson understood her position with FMS was temporary[84] and that layoffs were common in the construction industry.[85]   In fact, Johnson had been laid off twelve times before the October 20, 2011 RIF.[86]

Ultimately, Johnson can only offer her subjective belief that her gender discrimination and retaliation were the cause of her discharge from FMS.   However, it is well established that unsubstantiated and subjective beliefs are not competent summary judgment evidence.[87]   Accordingly, FMS's motion for summary judgment shall be granted on these claims.

---

[82] Rec. Doc. 22-30, p. 37 (pp. 141-143); p. 62-63 (pp. 244-245); p. 86 (p. 337-338).
[83] Rec. Doc. 22-30, p. 86 (pp. 337-338).
[84] Rec. Doc. 22-30, p. 55 (p. 15); Rec. Doc. 22-35.  In fact, the uncontroverted evidence shows that Johnson had been employed as a temporary laborer during 13 separate periods of time between the fall of 2009 and the fall of 2011.  Rec. Doc. 22-32, p. 3.
[85] Rec. Doc. 22-30, p. 18 (pp. 67-68).
[86] Rec. Doc. 22-32, p. 20 (p. 74).
[87] See, *Lovoi v. Treasure Chest Casino, LLC*, 1998 WL 1986951, *6 (E.D.La. 1998)(citing *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995)).

IV.     **CONCLUSION**

Wherefore, the Court GRANTS IN PART and DENIES IN PART Flour Maintenance Services, Inc.'s *Motion to Strike.*[88]

The Court further GRANTS Flour Maintenance Services, Inc.'s *Motion for Summary Judgment.*[89] Plaintiff Rose Johnson's claims are hereby DISMISSED with prejudice.   *Judgment* shall be entered accordingly.

Signed in Baton Rouge, Louisiana on <u>March 31, 2016</u>.


_Shelly D. Dick_

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[88] Rec. Doc. 30.
[89] Rec. Doc. 22.

30385                                                    21